**R. W. CALLOWAY, Attorney-Ad Litem, Appellant,**

v.

**ESTATE of Helen GASSER, Deceased, Appellee.**

**No. 1051.**

Court of Civil Appeals of Texas, Tyler.

Nov. 17, 1977.

Rehearing Denied Dec. 8, 1977.

R. W. Calloway, Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, for appellant.

Stephen J. Wilkinson, Asst. Atty. Gen., Austin, Harold B. Sanders, Sr., Clark, West, Keller, Sanders & Butler, Gregory S. C. Huffman, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

MOORE, Justice.

This suit was instituted by First National Bank in Dallas seeking a construction of the last will and testament of Helen Gasser, deceased, acting in its capacity as independent executor. It was stipulated that Helen Gasser died testate in Dallas County, Texas, on February 6, 1975, and that her last will and testament, dated March 20, 1972, had been duly admitted to probate in Dallas County, Texas, on February 24, 1975.

The testatrix provided that her estate was to pass to her husband, James P. Gasser, if he survived her, but if he failed to survive her then the estate was to be distributed in trust among numerous relatives with remainder to certain charities. Subsequent to the execution of the will, on July

19, 1974, the Gassers were legally divorced. As all provisions in favor of James P. Gasser, decedent's ex-husband, were rendered null and void by virtue of Sec. 69 of the Texas Probate Code, the bank was unclear, given the fact that James Gasser survived the testatrix, whether the numerous contingent bequests made to her relatives and certain charitable remaindermen would be given effect or whether her estate passed to her heirs by way of intestacy. It was stipulated that Helen Gasser left no surviving spouse, children or remote descendants, parents, grandparents, brothers, sisters, or descendants of brothers or sisters.

The attorney-ad-litem, appointed by the trial court to represent the unknown heirs of the decedent, alleged that the estate of the decedent passed to her heirs under the statutes of descent and distribution due to the fact that the bequests made to her relatives and the charities were conditioned upon the contingency that James P. Gasser predecease the testatrix, and, since he did not, all bequests lapsed and the estate passed to her heirs-at-law. Several of the contingent charitable remaindermen, as well as the State of Texas by and through its Attorney General, appeared and alleged that the estate of Helen Gasser passed to the contingent beneficiaries even though her ex-husband survived her because under the terms of the will the testatrix intended for her contingent beneficiaries to take in the event her husband could not. None of the parties alleged that the terms of the will were ambiguous and consequently no evidence was offered as to the intent of the testatrix.

After a hearing the trial court rendered judgment reciting, among other things, that all provisions of the last will and testament of Helen Gasser in favor of James P. Gasser were null and void, and that, since it was the intention of the testatrix as determined from the four corners of her will that the contingent beneficiaries were to take if for any reason James Gasser could not, the estate passed to the contingent beneficiaries named under the will. The attorney-ad-litem, representing the unknown heirs of Helen Gasser, perfected this appeal.

We affirm.

The facts, as delineated above, are not in dispute.

Tex.Prob.Code Ann. sec. 69 (1956) provides:

"If the testator is divorced after making a will, all provisions in the will in favor of the testator's spouse so divorced, or appointing such spouse to any fiduciary capacity under the will or with respect to the estate or person of the testator's children, shall be null and void and of no effect."

Under Section II of her will, the testatrix provided as follows:

"All the rest and residue of my estate, consisting of all property, real, personal or mixed which I may own at the time of my death, I give, devise and bequeath unto my husband, JAMES P. GASSER, if he survives me."

Under Sections III and IV of her will the testatrix provided:

"If my said husband does not survive me, I give, devise and bequeath unto: . . . .."

(Under Section III she bequeathed $5,000.00 each to a church and cemetery association. Under Section IV she bequeathed cash gifts to twenty relatives of whom none are shown to reside in this State, ranging from $2,500.00 to $10,000.00, provided each devisee survives her.)

Under Section V, she established five trusts of equal value out of the remainder of her estate for the benefit of her uncles and aunts, provided that upon the death of each designated beneficiary of a particular trust such trust would terminate and that the funds remaining therein were to be distributed in fee simple as follows:

(1) one-fourth to Hayward Memorial Hospital, Hayward, Wisconsin;

(2) one-fourth to Southwestern Medical Foundation, Dallas, Texas;

(3) one-fourth to Methodist Hospital of Dallas; and

(4) one-fourth to Baylor University Hospital, Dallas, Texas.

Both sides agree that the bequest to James P. Gasser and his appointment as independent executor were rendered null and void by reason of Section 69 of the Probate Code.

By a single point of error, the appellant attorney-ad-litem contends that the bequests made by Mrs. Gasser to her relatives were expressly contingent on Mr. Gasser's predeceasing her, and, since he did not, the condition precedent to their taking never occurred and thus they could not take under the will. Since Mr. Gasser was precluded from taking under the will by virtue of statute, appellant concludes that there was no one to take and, therefore, the decedent's estate descended to her heirs under the laws of descent and distribution.

Appellees, the State of Texas (by and through its Attorney General) and the charitable remaindermen, argue that it defies logic and public policy to tie the disposition of testatrix's estate to the death or survival of her divorced husband when he was no longer a qualified beneficiary and could take nothing under the will. They argue that by the use of the phrase "If my said husband does not survive me" the testatrix intended to say "If my said husband does not survive me *as beneficiary*" or "If my said husband does not survive me *as my husband*," and did not intend for the disposition of her estate to turn solely on his being the survivor. Appellees argue that the testatrix intended that if her husband could not take the property by reason of death or *some other cause*, the other devisees named under the will were to take the property.

Clearly, James P. Gasser, the ex-husband, cannot take under the will because of Section 69 of the Probate Code. The question presented is whether the testatrix intended that the contingent devisees were to take if for some reason other than death her husband could not (e. g., the application of Sec. 69 to an ex-spouse beneficiary) or whether she intended in such event that the bequests to the contingent devisees would lapse and the estate pass to her heirs by way of intestacy.

In support of the contention that the legacy lapsed, the attorney-ad-litem contends that the following Texas cases are dispositive of the issue presented: *McFarlen v. McFarlen,* 536 S.W.2d 590 (Tex.civ. App.—Eastland 1976, n.w.h.); *Volkmer v. Chase,* 354 S.W.2d 611 (Tex.Civ.App.— Houston 1962, writ ref'd n.r.e.). We think these cases are distinguishable on the facts and are not controlling for reasons to be pointed out later.

■ In construing a will, the ultimate function of the courts is to discover, if possible, from the language of the will the intent of the testator, and, having discovered it to give it effect. *Haile v. Holtzclaw,* 414 S.W.2d 916 (Tex.1967); *Guilliams v. Koonsman,* 154 Tex. 401, 279 S.W.2d 579 (1955).

In *Burton v. King,* 459 S.W.2d 663, 667 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.), this court made the following observation:

". . . as has been often observed, a will to be construed is rarely in exactly the same language as another will construed in any reported case, but usually is a thing unto itself. Accordingly, when construction is necessary the court will not adhere rigidly to precedent nor will it arbitrarily follow any rule save that which commands it to ascertain and effectuate the testamentary intent; while other rules are observed so far as practical, they are not absolute or controlling. After all, it has been said, each case must depend upon the ascertainment of the intent of the testator as manifested by the language of the will."

■ The fact that a person makes a will raises a presumption that he intended to die testate as to all of his property and, conversely, that he did not intend to die intestate as to any of it. *Haile v. Holtzclaw,* supra; *Briggs v. Peebles,* 144 Tex. 47, 188 S.W.2d 147 (1945); *Kuehn v. Bremer,* 132 S.W.2d 295 (Tex.Civ.App.—Waco 1939, writ ref'd). The presumption is strengthened when the testator has included a residuary clause in his will. *Morris v. Finkelstein,* 442 S.W.2d 452 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.).

■ A corollary to the presumption against intestacy is the rule of construction that if a will is capable of alternate interpretations, one of which causes property to pass by intestate succession and the other causes it to pass by testate succession, the interpretation resulting in intestacy will not be adopted if it can be avoided by reasonable construction. *Ferguson v. Ferguson,* 121 Tex. 119, 45 S.W.2d 1096 (1931).

Upon applying the foregoing rules of construction to the will in question, we think it apparent from the meticulous manner in which the testatrix attempted to dispose of her estate that she intended to die testate. She wanted her husband to take first, but, if he could not, she wanted her estate to pass to her relatives and the other named beneficiaries with gifts over to certain named charities. The complicating factor is brought about by the subsequent divorce.

At common law a divorce did not operate to revoke a testamentary disposition in favor of an ex-spouse. See *Grudziecki v. Starr,* 351 S.W.2d 381 (Tex.Civ.App—Waco 1961, writ ref'd); *Merritt v. Merritt,* 158 S.W.2d 116 (Tex.Civ.App.—Fort Worth 1941, writ ref'd w.o.m.). This rule led to unsatisfactory results as a divorced spouse generally was no longer a natural object of the testator's bounty. See *Smith v. Smith,* 519 S.W.2d 152 (Tex.Civ.App.—Dallas 1974, writ ref'd).

■ In order to rectify the situation, the legislature of this State, as well as a number of other states, enacted statutes specifying that, as a matter of law, a divorce operates as a revocation of that part of a will making provisions for a former spouse. These statutes, being in derogation of the common law, must be strictly construed. *Peiffer v. Old Nat. Bank & Union Trust Co.,* 166 Wash. 1, 6 P.2d 386 (1931). However, while the statutes clearly revoke all provisions in favor of an ex-spouse, they do not extend to operate as an implied revocation of devises and bequests to other objects of the testator's bounty. *Peiffer v. Old Nat. Bank & Union Trust Co.,* supra.

There being no Texas cases in support of appellees' position, appellees rely on the following cases from other jurisdictions which hold, in factual situations almost identical to ours, that the will should be construed and given effect as though the ex-husband had predeceased the testatrix, which has the effect of satisfying the condition precedent and thereby passing the decedent's estate to the contingent beneficiaries. *Russell v. Estate of Russell,* 216 Kan. 730, 534 P.2d 261 (1975); *In re Estate of Fredericks,* 311 So.2d 376 (Fla.App.), cert. denied, 320 So.2d 394 (Fla.1975); *First Church of Christ, Scientist v. Watson,* 286 Ala. 270, 239 So.2d 194 (1970); *Steele v. Chase,* 151 Ind.App. 600, 281 N.E.2d 137 (1972); *Peiffer v. Old Nat. Bank & Union Trust Co.,* supra. These decisions represent the weight of authority in this country. The minority view holds that, in the absence of death of the ex-husband before the death of the testator, the contingency necessary to bring the contingent bequests into effect never occurs and therefore the decedent's estate passes by intestacy.[1]

Typical of the holdings following the majority view is the case of *First Church of Christ, Scientist v. Watson,* supra, wherein the Alabama Supreme Court held:

". . . The language of these various state statutes would indicate that each was based upon sec. 53 of the Model Probate Code. In fact, the newer Uniform Probate Code, in sec. 2–508, provides:

'. . . (D)ivorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator, or guardian, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of

---

1. *In re Will of Lampshire,* 57 Misc.2d 332, 292 N.Y.S.2d 578 (1968); *In re Estate of Rosecrantz,* 183 Wis. 643, 198 N.W. 728 (1924); *In re Estate of McLaughlin,* 11 Wash.App. 320, 523 P.2d 437 (1974).

revocation by divorce or annulment *passes as if the former spouse failed to survive the decedent,* and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent.' (Emphasis added.)

"While our statute does not contain all of the provisions of sec. 2–508 of the Uniform Probate Code, we think that property which is prevented from passing to the former spouse because of revocation by divorce should pass as if the former spouse failed to survive the decedent, unless a contrary intention is apparent from the provisions of the will." 239 So.2d at 196.

While Section 69 of the Texas Probate Code likewise does not contain all of the provisions of Sec. 2–508 of the Uniform Probate Code, we are impressed with the fact that Sec. 2–508 has been approved by the National Commissioners on Uniform State Laws and the American Bar Association in 1969. See *Russell v. Estate of Russell,* supra. Due to the fact that the issue presented in the cases representing the majority view is the same as the issue presented in the present case, we adopt the rule announced by the majority view because we think it is the better reasoned rule of law.

■ Upon applying Section 69 of the Texas Probate Code to the will in question, the former spouse, James P. Gasser, could take nothing. He was as effectively barred from taking as if he had predeceased the testatrix. While the testatrix made it clear that she wanted her husband to take her entire estate if he could, we feel she also made it clear that she wanted her estate to pass to her contingent devisees if he could not take. There is nothing to indicate that, in the event her husband could not take, she wanted her estate to pass via intestacy. Her obvious intention should not be defeated just because she failed to anticipate that her husband might not be able to take for some reason other than death. Consequently, we hold that the testatrix's estate passed to her contingent beneficiaries named in the will in same manner as if her ex-husband

had predeceased her. We take this view, not only because it represents the majority view, but also because it is in line with the rationale of early decisions of this state allowing the contingent beneficiaries, as opposed to the heirs-at-law, to take in situations somewhat similar to the present one. *Fitzgerald v. Ayres,* 179 S.W. 289 (Tex.Civ. App.—Dallas 1915, writ ref'd); *Sanger v. Butler,* 45 Tex.Civ.App. 527, 101 S.W. 459 (Tex.Civ.App.1907, writ ref'd). Furthermore, it is consistent with the cardinal rule in will construction cases as well as the policy behind the enactment of Sec. 69 of the Texas Probate Code that effect must be given as far as possible to the testator's intent.

Appellant's reliance on *McFarlen v. McFarlen,* supra, and *Volkmer v. Chase,* supra, is misplaced. In *McFarlen* the testator, after divorcing his wife, executed a will leaving his estate to the ex-wife, Velma Beatrice McFarlen. The will provided: "In the event Velma Beatrice McFarlen predeceases me, then, *in that event and in that event only,"* his estate was to go to his daughter. (Emphasis supplied.) Thereafter he remarried Velma and again divorced her and died without making a new will. The court ruled that the ex-wife was prevented from taking by virtue of Section 69 of the Texas Probate Code and, upon construing the remainder of the will, ruled that his contingent beneficiary could not take since he emphatically provided that she was to take "only" if Velma Beatrice McFarlen predeceased him, and as a consequence, the estate passed to his heirs via intestacy. In *Volkmer* the court held that the ex-wife was precluded from taking by virtue of Sec. 69 of the Texas Probate Code and further that the contingent beneficiary was precluded from taking because the language used by the testator in stating the conditions under which the contingent beneficiary was to take was ambiguous and his intent could not be ascertained. Accordingly, the court held that his estate passed to his heirs via intestacy.

There is a considerable difference between the wording of the wills in those two

cases and the wording of the will in the instant case. Therefore, we think *McFarlen* and *Volkmer* are distinguishable on the facts and for that reason have little or no bearing on this cause which, after all, must depend upon the ascertainment of the intent of the testatrix as manifested by the language of the will.

The judgment of the trial court is affirmed.

McKAY, J., not participating.